UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

RICHARD BLASSBERG,

                Plaintiff,

-against-

PHILIP AMICONE, individually,
EDMUND HARTNETT, individually,
JOHN A. LISZEWSKI, individually,
DANIEL BARAHONA, individually,
ROBERT GRECO, individually, PAUL
WOOD, individually, DAVID MASON,
individually, JOSEPH GALINSKI,
individually, RICHARD MADDAFARI,
individually, EILEEN AHEARN,
individually, RICHARD ALAIMO,
individually, the CITY OF YONKERS,
New York, and City of Yonkers'
SANITATION WORKERS #1 to #20,

                Defendants.

-----------------------------------------------------------x

**ORIGINAL**

**08 CIV. 1506**

07 Civ.   (   )

**COMPLAINT**

**Jury Trial Demanded**

      Plaintiff RICHARD BLASSBERG, by his attorneys Lovett & Gould, LLP, for his complaint respectfully states:

### NATURE OF THE ACTION

      1. This is an action for compensatory and punitive damages, proximately the result of conduct jointly engaged in by the Defendants while acting under color of the laws of the State of New York, for violations of Plaintiff's rights as guaranteed by reason of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

1

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

## THE PARTIES

3. Plaintiff RICHARD BLASSBERG is a citizen of the United States, a domiciliary of the State of New York, and a resident of the Northern Counties. He is also the Editor-in-Chief of a free weekly newspaper known as "The Westchester Guardian" (hereinafter "Guardian"). That publication focuses on and reports about amongst other things municipal corporate corruption in the incumbent administration of the City of Yonkers.

4. Defendant PHILIP AMICONE (hereinafter "Amicone"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly elected Mayor of the Defendant City.

5. Defendant EDMUND HARTNETT (hereinafter "Hartnett"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Police Commissioner for the Defendant City.

6. Defendant JOHN A. LISZEWSKI (hereinafter "Liszewski"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the duly appointed Commissioner of Public Works for the Defendant City.

7. Defendant DANIEL BARAHONA (hereinafter "Barahona"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by the Defendant City.

8. Defendant ROBERT GRECO (hereinafter "Greco"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the Defendant City's Public Works Coordinator.

9. Defendant PAUL WOOD (hereinafter "Wood"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by the Defendant City.

10. Defendant DAVID MASON (hereinafter "Mason"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was the Defendant City's Manager of Public Works.

11. Defendant JOSEPH GALINSKI (hereinafter "Galinski", who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by the Defendant City.

12. Defendant RICHARD MADDAFARI (hereinafter "Maddafari"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by the Defendant City.

13. Defendant EILEEN AHEARN (hereinafter "Ahearn"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by the Defendant City.

14. Defendant RICHARD ALAIMO (hereinafter "Alaimo"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was a Police Officer employed by the Defendant City.

15. Defendant CITY OF YONKERS, New York (hereinafter "City"), is a municipal corporate subdivision of the State of New York, duly existing by reason of and pursuant to the laws of said State.

16. Defendants SANITATION WORKERS #1 to #20, whose identities are presently unknown, are employees of the City of Yonkers, New York, who actively assisted the named Defendants in violating Plaintiff's rights.

## THE FACTS

17. On the front page of the Guardian published July 5, 2007, the headline was: "Amicone Sells Out Families of Yonkers...Enbraces Giulio Cavallo; Brings in Nick Spano Mob". In that connection:

    a. A page "2" article referenced Amicone as a "Man Who Would: Take the endorsement of Nick Spano, a fallen, crooked politician, and create taxpayer-funded jobs for his mob; Bring Giulio Cavallo, a political prostitute who sells cross-endorsements for cash, into the election process; Run on a party line whose chairman, Zehy Jereis, is an election fraudster and a convicted drug dealer", and,

    b. A page "4" editorial expressed the following "Opinion": "Such has been the sordid tale of recent elections in Westchester, and particularly in the City of Yonkers. Given that history, we believe that the race for Mayor of Yonkers, pitting incumbent Republican Phil Amicone, and every undesirable political creature he can muster, against Independent Nader Sayegh, and Democrat Dennis Robertson, in a context that will require the utmost attention of the Voters' Rights Division of the Justice Department, and

the provision of sufficient observers and enforcement personnel to protect the integrity of the outcome."

18. On the front page of the Guardian published the week of July 9, 2007, the headline read: "A Tale of Two Cities", beneath which to the left was a photograph of the then Mayor of Mount Vernon, New York (Ernie Davis), and beneath which to the right was a photograph of Amicone. The Davis photograph bore the legend: "DUMB". The Amicone photograph bore the legend: "DUMBER" (hereinafter collectively referred to as "DUMB & DUMBER") - - in connection with which readers were invited to "See <u>In Our Opinion</u>, p4".

19. In the editorial concerning the front page story, captioned "In Our Opinion . . .Sodom and Gomorrah", the Guardian expressed *inter alia* the following thoughts regarding Davis and Amicone:

> "We must sadly conclude that Davis and Amicone have each been abject failures, little more than caretakers, at best, not likely to improve the circumstances of the city they have been entrusted with, if placed back into their present positions. In short, we believe Ernie Davis and Phil Amicone have not only squandered vast human and financial resources, but also the wonderful opportunity to bring about significant positive change.
>
> Consider the fact that Mount Vernon and Yonkers are each under Federal Investigation. . .in connection with projects and programs involving huge sums of money. . .There's a distinct odor of fish somehow attached to these financial mysteries.

5

> . . .As regards crime, there is no denying that street crime and gun violence in both Yonkers and Mount Vernon have been spiraling out of control under Amicone and Davis respectively. Additionally, the Yonkers Police Department has had, and continues to have, a well-deserved reputation for police brutality, a problem neither Phil Amicone nor Commissioner Hartnett have made any convincing effort to abate.
>
>   *    *    *
>
> The decay and destruction of formerly strong, proud neighborhoods and public schools under Davis and Amicone has been the inevitable product of corrupt, uninspired administrations more concerned with satisfying and fattenening political powerbrokers and criminal elements such as Giulio Cavallo, Zehy Jereis, Nicky Spano, Larry Schwartz, Reggie LaFayette, and their ilk. . .In short, we believe Ernie and Phil have been marching to the beat of the wrong drummer for quite some time, and are not likely to alter their cadence anytime soon."

20. Commencing during the week of July 9, 2207, and continuing thereafter, Guardian employees repeatedly sought to distribute inside and/or outside Yonkers' City Hall:

  a. Copies of DUMB & DUMBER as contained in the Guardian,

  b. Copies of the July 26, 2007, Guardian the front page headline of which

reported: "Guardian Publisher Offers $25,000 Reward For Information Leading to the Arrest and Conviction of Westchester Public Officials and Politicians Who Have Broken the Law and Betrayed the Public Trust", and,

  c. Copies of the August 2, 2007, Guardian the front page headline of which read: "Phil Amicone A Huge Flop! Fails to Deal With Police Brutality. Sharpton Correctly Identifies Problem As <u>Not</u> Targeting Only the Minority Community".

 21. In that connection pursuant to a coordinated action orchestrated by Amicone, Hartnett, Liszewsky, their co-defendants and numerous members of the City's Police and Public Works Departments, all copies of the Guardian were repeatedly confiscated and discarded by Defendants - - hateful conduct motivated in whole and/or in substantial respect by the substantive content of the Guardian concerning Amicone and the Yonkers Police.

 22. Also in that connection and pursuant to the same coordinated action, Guardian newsracks were repeatedly confiscated and *inter alia* discarded by Defendants under the direction of Liszewski, action taken by similarly motivated hateful conduct.

 23. As a further consequence of that coordinated action, Defendants repeatedly and daily targeted employees of the Guardian as indicated *infra*, threatened them with arrest, and charged them criminally - - with the same motivation and the objective of entirely stopping dissemination of the Guardian in and about City Hall and the City because of its substantive content.

 24. By way of contrast publications favorable to Amicone and the City (such as "Yonkers City of Vision") were permitted by the Defendants to be dispensed from *inter alia*:

7

      a. A newsrack, located on a stairway in City Hall, and

      b. A counter at a security desk in City Hall as manned by a uniformed Police Officer.

25. Also by way of contrast, persons distributing the publications favorable to Amicone and the City were permitted with impunity by Defendants to place those periodicals:

      a. In the stairway newsrack referenced *supra*, and,

      b. On the security desk counter as referenced *supra*.

26. For the purpose of disseminating copies of the Guardian as referenced *supra* Guardian employees repeatedly and non-disruptively distributed to willing recipients, copies of the Guardian.

27. As a proximate result the owner/publisher of the Guardian (Selim Zherka) and Guardian employees were confronted by City Police Officers, including Wood and

      a. Ordered to cease distributing the Guardian on the supposed premise that its distribution was illegal in Yonkers,

      b. Issued criminal informations charging him with distributing the Guardian,

      b. Ordered to leave the premises,

      c. Threatened with arrest/incarcerate should they return to distribute the Guardian, and,

      d. Coerced to depart from the City by intimidation.

21. Under the premises Defendants' conduct caused Plaintiff to suffer: repeated violations of his rights as guaranteed by the First and Fourteenth Amendments to the

United States Constitutions; emotional upset; public embarrassment; public humiliation; shame; anxiety; and to otherwise render him sick and sore.

## AS AND FOR A FIRST CLAIM

22. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "21", inclusive.

23. Under the premises Defendants violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

24. Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "21", inclusive.

25. Under the premises Defendants violated Plaintiff's rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully demanded:

   a. Awarding against all Defendants $10,000,000 in compensatory damages or such additional compensatory damages as the jury may determine,

   b. Awarding against each of the individually named Defendants $1,000,000 in punitive damages or such additional punitive damages as the jury may impose,

c. Permanently enjoining Defendants from interfering with Plaintiff's distribution and/or dissemination of the Guardian within the City and/or City Hall,

d. Declaring that Defendants' conduct violated Plaintiff's rights as guaranteed by the First and Fourteenth Amendments,

e. Awarding as against all Defendants reasonable attorney's fees and costs, and,

f. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
      February 12, 2008

                          LOVETT & GOULD, LLP
                          Attorneys for Plaintiff
                          By:_____
                          Jonathan Lovett (4854)
                          222 Bloomingdale Road
                          White Plains, N.Y. 10605
                          914-428-8401